## UNION SWITCH & SIGNAL CO. *v.* JOHNSON RAILROAD SIGNAL CO.

*(Circuit Court, D. New Jersey.   November 16, 1892.)*

1. PATENTS FOR INVENTIONS—INFRINGEMENT—LICENSE.

Under letters patent No. 284,716, issued September 11, 1883, to George W. Blodgett and George R. Hardy, for "improvements in railroad signals," a license was granted to a certain railroad company to "make and use" the patented article. A manufacturer, learning that the company intended to erect such signals at a certain junction, submitted a proposal to furnish them complete at a certain price. This proposal was accepted, and the signals were made and erected accordingly. *Held,* that the transaction was that of manufacture and sale on the one side and of purchase on the other, and that the manufacturer was guilty of infringement, and could not excuse himself on the ground that in making the signals he was the mere servant or employe of the licensee.

2. SAME—NECESSARY PARTIES.

A licensee to "make and use" a patented article is not a necessary party complainant in a bill brought by the owner of the patent for infringement.

In Equity.   Bill by the Union Switch & Signal Company against the Johnson Railroad Signal Company for infringement of a patent.   Decree for complainant.

*J. Snowden Bell,* for complainant.

*George W. Miller,* for defendant.

GREEN, District Judge.   The bill of complaint in this cause charges the infringement by the defendant of letters patent No. 284,716, granted September 11, 1883, to George W. Blodgett and George R. Hardy, for "improvements in railroad signals," and by them assigned to the complainant.   The defendant, in its answer, practically admits the infringement as charged, but seeks to avoid any responsibility therefor, upon the ground that the Boston & Albany Railroad Company, for whom the infringing signals had been manufactured by the defendant, had, previously to the assignment of the letters patent to the complainant, been duly and lawfully licensed by the patentees to make and use the said "improved railroad signals" protected by said letters patent upon all lines owned or operated by that company to the full end of the term of said letters patent, and that in the manufacture of the infringing signals the defendant was acting solely as a servant or employe of that company, and strictly under and in accordance with the terms of the license. The important allegations in the answer are as follows:

"And this defendant, further answering, admits that the said Blodgett and Hardy executed to the complainant a writing purporting to be a transfer of a certain interest in said alleged patent, but denies that the same granted to the complainant exclusive rights or privileges, but charges and insists that said right so transferred was not an exclusive right or interest in said alleged letters patent, and does not purport to be such, but that they expressly reserved to the Boston & Albany Railroad Company, its servants, agents, assigns, or representatives, the right, license, and privilege to make and use the said improvements covered by said alleged letters patent upon all lines owned or operated by the said Boston & Albany Railroad Company, to the full end of the term of the said patent; and this defendant denies that said complainant is, or ever has been, in full and exclusive possession and enjoyment of the privileges

secured, or claimed to be secured, under and by virtue of said alleged letters patent, but charges the truth to be that the Boston & Albany Railroad Company, in pursuance of their right, and by virtue of the certain license made, executed, and delivered to them by the said Blodgett and Hardy, under seal, prior to the assignment to said complainant, have and now are exercising the privileges of making and using said improvement in railroad signals upon the lines owned or operated by it, and that it has the right so to do. And this defendant denies that it is now constructing, selling, and using railroad signals in material parts thereof substantially the same in construction and operation as in said letters patent mentioned, within the state of New Jersey or elsewhere in the United States, or that it has ever constructed, sold, or used said railroad signal in material parts substantially the same in construction and operation as in said alleged letters patent mentioned, except, as the agent, servant, and employe of the said Boston & Albany Railroad Company, it did construct certain appliances in material parts similar in construction and operation to those mentioned in said letters patent, but that the same were ordered by and for the exclusive use of, and used upon the railroads owned and operated by, the Boston & Albany Railroad Company; and this defendant claims that it has the right so to do by reason of said reservation mentioned in the assignment to the complainant."

The license to the Boston & Albany Railroad Company, referred to by the defendant in its answer, is as follows:

"Whereas, letters patent of the United States No. 284,716 were granted September 11, 1883, to George W. Blodgett and George R. Hardy for an improvement in railroad signals; and whereas, the Boston and Albany Railroad Company are desirous of purchasing the right and license to make and use the same on and for their own lines: Now these presents witness that, in consideration of one dollar to us paid by said company, and for other good and valuable considerations, the receipt of all of which is hereby acknowledged, we, the said George W. Blodgett and George R. Hardy, have sold, granted, and transferred, and by these presents do sell, grant, and transfer, to the said Boston and Albany Railroad Company, its successors and assigns, the right, license, and privilege to make and use the said improvement in railroad signals upon all the lines owned or operated by them to the full end of the term of said patent."

This is clearly a license to the Boston & Albany Railroad Company to manufacture, and to use after manufacture, upon all lines owned or operated by them, the railroad signals protected by the letters patent referred to. Whether the license is a mere naked limited license, not capable of assignment by the Boston & Albany Railroad Company, as was argued by the counsel for the complainant, or whether it should receive a broader construction, as the defendant insists, become immaterial questions in the view taken by the court of the matters in issue. Admitting that the word "assigns" in the license demands a construction of the greatest liberality, and would authorize the assignment by the railroad company of all rights and privileges secured thereby to any person or corporation whom it might choose to make its assignee, yet such construction would in no wise aid the defendant in its attempt to relieve itself from responsibility for its admitted infringing acts. There is not a *scintilla* of evidence tending to show that the defendant was either an assignee or a licensee of the Boston & Albany Railroad Company. No pretense of such assignment or of such license is made in the answer of

the defendant. The defendant puts its defense upon entirely different grounds. It assumes to be an employe or an agent of the Boston & Albany Railroad Company, and, as such, it claims that in the manufacture of the railroad signals in question it was directly working under the license, and hence its action is not amenable to the law. A defense of this character, if well founded, would have great weight. But, unfortunately for the defendant, the testimony wholly fails to justify the assumption. No evidence has been offered tending to show an agency between the defendant and the railroad company, or a contract of employment, in the legal sense of those terms. What the testimony does clearly show without any contradiction is this: The defendant, being informed that the railroad company intended to erect at a station upon one of its lines known as "Athol Junction" the signals in question, submitted a proposal to furnish them complete at and for a certain price. This proposal was, after consideration, accepted by the railroad company, and the signals were consequently erected by the defendant. This is the whole transaction. The defendant was manufacturer and seller. The railroad company was buyer. No other or different relationship existed between the parties to this transaction. To assert that the defendant was the agent or employe or servant of the railroad company, in the sense in which it uses those descriptive terms in its answer, is simply to pervert their distinctive and legal meaning. The defendant was neither, in such sense as would enable it to find any justification for its infringing act in the license to the railroad company. Besides, the license was "to make" and "to use" in a limited way only. The defendant "made" and "sold" to others to use. It can hardly be contended that the most liberal construction of the license would authorize the licensee to sell the signals to others. The rights "to make," "to use," and "to sell" a patented article are severable and distinct. Each right is subject to conveyance, in exclusion of the others. The license to do the one does not include, except, perhaps, under special circumstances which have no existence here, the right to do the other.

It was urged upon the argument that the bill of complaint was demurrable for want of necessary parties, it being insisted that the Boston & Albany Railroad Company, because of the interest vested in it by the license, should have been made a party complainant. It is only necessary to say that the rule is otherwise. Notwithstanding the license, the legal right in the monopoly created by the letters patent remains in the patentee, and he alone can maintain an action against a third party, who commits an infringement upon it. *Gayler* v. *Wilder*, 10 How. 495. There must be a decree for complainant in accordance with the prayer of the bill.